David M. Stein (Cal. Bar No. 198256)
 *dstein@ggtriallaw.com*
Joshua M. Robbins (Cal. Bar No. 270553)
 *jrobbins@ggtriallaw.com*
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Phone: 949.383.2800
Fax:    949.383.2801

Attorneys for Petitioner
EN POINTE TECHNOLOGIES SALES, LLC,
f/k/a PCM SALES ACQUISITION, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EN POINTE TECHNOLOGIES SALES, LLC, a Delaware limited liability company, f/k/a PCM SALES ACQUISITION, LLC,<br><br>Petitioner,<br><br>v.<br><br>OVEX TECHNOLOGIES (PRIVATE) LIMITED,<br><br>Respondent. | Case No.: 2:17-cv-04362 PSG (SKx)<br><br>[~~PROPOSED~~] **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF CONTEMPT**<br><br>Judge: Hon. Philip S. Gutierrez<br>Petition Filed: June 12, 2017 |

Before this Court is En Pointe Technologies Sales, LLC's ("En Pointe") request to hold Respondent Ovex Technologies (Private) Limited ("Ovex") and its purported sole shareholder, non-party Sheikh Khawar Latif ("Latif"), in contempt of the Order Granting En Pointe's Petition to Compel Arbitration and for Anti-Suit Injunction ("Anti-Suit Injunction Order"), entered by this Court on September 15, 2017 (Dkt. No. 25). The Court heard oral argument in this matter on August 13, 2018. For the reasons discussed below, the Court finds each of Ovex and Latif in contempt of Court.

## I. BACKGROUND

En Pointe is a limited liability company organized under the laws of the State of Delaware, with its headquarters in El Segundo, California. Ovex is a privately owned company organized under the laws of Pakistan, with its headquarters in Islamabad, Pakistan. The two companies were previously parties to a contract under which Ovex was to provide services to En Pointe (the "Agreement").

The Agreement stated that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" should be resolved through JAMS arbitration conducted in California. It also provided that the contract would "be governed by and construed in accordance with the laws of the State of California," and that the parties "consent to the jurisdiction and venue in the state of California." (Dkt. No. 5, Ex. A).

By 2017, a dispute had arisen between En Pointe and Ovex regarding compliance with the terms of the Agreement. On or about June 3, 2017, Ovex filed a lawsuit in Islamabad, Pakistan (the "Islamabad Litigation") challenging En Pointe's termination of the Agreement. (Dkt. No. 26-4). Ovex requested injunctive relief and $64 million in damages.

On June 6, 2017, En Pointe filed a notice of arbitration with JAMS in Los Angeles, California, stating, among other things, claims that Ovex had breached the

Agreement. *See* Related Case No. 2:18-cv-3235 (Petition to Recognize Arbitral Award) at Dkt. No. 6-4.

On June 12, 2017, seeking to terminate the Islamabad Litigation and enforce the arbitration and forum selection clauses in the Agreement, En Pointe filed a Petition to Compel Arbitration and for Anti-Suit Injunction in this Court. (Dkt. No. 1). En Pointe served the petition on Ovex, but Ovex did not file any opposition or appear in the case. On September 15, 2017, the Court granted En Pointe's Petition and issued the Anti-Suit Injunction Order. (Dkt. No. 25).

Under the terms of the Anti-Suit Injunction Order, Ovex was required to submit to JAMS arbitration in Los Angeles all "claims for damages or declaratory relief arising out of, or relating to" the Agreement, as well as "the interpretation, effect, or alleged breach" of that contract. (*Id.*). Further, the Court ordered that "Ovex, and all persons, firms, and corporations acting on its behalf and under its direct and indirect control, shall immediately take steps to dismiss its action currently pending before the Islamabad High Court in Pakistan." (*Id.*). The Court enjoined Ovex from "pursuing any other action or enforcing any order involving any claim arising out of, or related to, the [Agreement] in Pakistan or anywhere other than California as is specified in the [Agreement]." (*Id.*). Still further, the Court ordered Ovex to "provide En Pointe with written notice of each step taken to carry out this order." (*Id.*).

The JAMS Arbitration proceeded. Ovex did not participate in it. On March 9, 2018, the arbitrator appointed by JAMS issued a Partial Final Award, finding that Ovex, and not En Pointe, had breached the Agreement, and awarding monetary damages and attorney fees to En Pointe. (Dkt. No. 26-3).

Notwithstanding this Court's Anti-Suit Injunction Order and the issuance of an arbitral award in En Pointe's favor, Ovex has continued to prosecute the Islamabad Litigation. After the Anti-Suit Injunction Order issued, Ovex opposed a motion filed by En Pointe to dismiss the Islamabad proceeding for lack of

jurisdiction. (Dkt. No. 26-5). The Islamabad court granted the motion to dismiss, but, undeterred, Ovex is currently appealing the dismissal order. (Dkt. No. 26-6). Records from Pakistan show that Latif authorized this action on Ovex's behalf and that both Ovex and Latif have been actively violating this Court's Anti-Suit Injunction Order. (Dkt. Nos. 26-9, 26-10, and 26-11).

Moreover, Ovex has expanded the legal proceedings by seeking to hold En Pointe in both civil and criminal contempt in Pakistan. (Dkt. Nos. 26-7, 26-2 (¶ 96)). Ovex's contempt motions were filed within a day of the Anti-Suit Injunction Order. Ovex is still pursuing them months later.

On April 3, 2018, Latif filed a separate action (the "Lahore Litigation")—this time in Lahore, Pakistan instead of Islamabad—against ten officers and directors of En Pointe and its parent company, PCM, Inc. (Dkt. No. 26-8). Latif admits that he brought this suit in his capacity as "the sole beneficial shareholder of all issued share capital of M/s. Ovex Technologies (Private) Limited," and the "sole owner and beneficiary of the business being run through Ovex." (*Id.*). He expressly alleges that he is bringing claims "on behalf of Ovex." (*Id.*). That suit, too, is expressly barred by the Anti-Suit Injunction Order.

Latif's claims in the Lahore Litigation allege that Ovex was harmed as the result of a widespread scheme to drive Ovex employees to leave the company and join Pakistan-based affiliates of PCM and a competitor of PCM called Zones, Inc.[1] (*Id.*). Latif alleges that he was derivatively harmed as a shareholder of Ovex by virtue of the defendants' alleged actions toward Ovex, which he claims amounted to breaches of the Agreement and caused Ovex to lose out on profits. (*Id.*). And he asserts he is entitled to approximately $150-200 million in damages (on a $400,000

---

[1] Latif's allegations have already been found false. Indeed, the arbitrator concluded precisely the opposite of what Latif has alleged, finding that Ovex and its management intentionally enacted a scheme to drive Ovex employees—who possessed knowledge of En Pointe's trade secrets—to join a competitor, Zones. (Dkt. No. 26-3). The arbitrator found that En Pointe did not have any liability to Ovex. (*Id.* at p. 36).

1 annual revenue business). (*Id*.). Latif brings these claims in Lahore against the
2 individual officers, directors, and agents of En Pointe and PCM, while at the same
3 time causing Ovex to continue to pursue the Islamabad Litigation based on the same
4 underlying allegations, both actions arising out of the Agreement, and both in
5 violation of this Court's Order.

6 On May 18, 2018, En Pointe filed a motion for order to show cause why Ovex
7 and Latif should not be held in contempt of the Anti-Suit Injunction. (Dkt. 26).
8 That motion was served on Ovex and Latif by mail and electronic mail on June 1,
9 2018. (Dkt. 28). Neither Ovex nor Latif submitted any response.

10 On July 5, 2018, the Court entered the Show Cause Order and set a hearing
11 date for August 13, 2018. (Dkt. 29). En Pointe served notice of that Order on Ovex
12 and Latif by mail and electronic mail. (Dkt. 30). Neither Ovex nor Latif submitted
13 any response.

14 On August 13, 2018, the Court held the show-cause hearing. Neither Ovex
15 nor Latif appeared.

## II. LEGAL STANDARDS

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990); *see also* 18 U.S.C. § 401. "A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders." *Sloane v. Karma Enters.*, No. CV 08-5094 MMM (VBKx), 2008 WL 11343430, at * 2 (C.D. Cal. Nov. 25, 2008), *citing Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). Notably, "[f]ailure to comply need not be intentional" for a Court to find a party in contempt of its order. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986); *see also Go-Video v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993) ("The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order."). Nor must the moving party demonstrate harm as a result of a person's non-compliance.

*Citizens For Lawful and Effective Attendance Policies v. Sequoia Union High School Dist.*, No. C 87-3204 MMC, 1998 WL 305513, at *3, n.3 (N.D. Cal. June 4,1998). Rather, the sole inquiry is whether the person "fail[ed] to take all the reasonable steps within [his] power to insure compliance with the [court's] order." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146-47 (9th Cir. 1983). Once the moving party establishes that the contemnors violated a specific order, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

## III. DISCUSSION

### A. Ovex Is In Violation Of The Anti-Suit Injunction Order.

Ovex has continued to litigate in Pakistan, notwithstanding this Court's clear directive that Ovex "immediately take steps to dismiss its action currently pending before the Islamabad High Court in Pakistan" and submit to arbitration of any claims. (Dkt. 1). Since the Court issued the Anti-Suit Injunction, Ovex has refused to participate in the arbitration proceedings, and Ovex has not taken any steps to dismiss the Islamabad Litigation. Rather, Ovex has taken numerous affirmative steps to continue that litigation. These actions violate the Anti-Suit Injunction Order. Ovex is thus in contempt of that Order. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (where party failed to dismiss a foreign suit, the party was in contempt of anti-suit injunction requiring it to "immediately take all steps necessary to cause dismissal of the [foreign] Action"); *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1297 (11th Cir. 2002) (party found in contempt of anti-suit injunction because he continued to make "post-injunction filings" in enjoined proceedings); *Cardell Fin. Corp. v. Suchodolski Assocs.*, 896 F. Supp. 2d 320, 328 (S.D.N.Y. 2012) ("the Court finds that Worldstar was in contempt of the [anti-suit injunction] when it initiated the Worldstar Lawsuit").

### B. Latif Is In Violation Of The Anti-Suit Injunction Order.

Latif has also violated the Anti-Suit Injunction Order. First, he has helped to direct Ovex's actions in continuing the Islamabad Litigation. The Anti-Suit Injunction Order bars Ovex and "all persons . . . acting on its behalf" from "pursuing any other action or enforcing any order involving any claim arising out of, or related to, the [Agreement] in Pakistan or anywhere other than California as is specified in the [Agreement]." Because Latif, as Ovex's sole shareholder and director, has acted on Ovex's behalf and caused it to pursue the Islamabad Litigation despite the Anti-Suit Injunction Order, Latif is in contempt of that Order.

Second, Latif has also violated the Order by pursuing the Lahore Litigation. Latif expressly alleges that the Lahore Litigation is brought "on behalf of Ovex." (Dkt. No. 26-8 at ¶ 22). And, although the Lahore Litigation involves parties other than En Pointe and Ovex, it is plainly covered by the mandatory arbitration provision of the Agreement and by the Anti-Suit Injunction Order.

In examining arbitration agreements, courts construe the terms "arising out of" or "relating to" broadly. *See, e.g.*, *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (agreement requiring arbitration of claims that "relate to" agreement is intended to "reach all aspects of [the parties'] relationship"); *Architects, Inc. v. Diamond Ridge Development LLC, et. al.*, No. CV 07-06866 MMM (FMOx), 2008 WL 637603, at *6 (C.D. Cal. 2008)(unpublished) (holding that the phrase, "arising out of or related to" connotes an expansive arbitration provision).

The claims in the Lahore Litigation plainly relate to, and arise out of, the Agreement. Throughout the complaint, Latif alleges that the defendants' actions constituted breaches of the Agreement. (Dkt. No. 26-8 at ¶ 14) ("The steps taken through Enpointe in this regard were malicious and amounted to the breach of [the Agreement]); *id*. at ¶ 18 ("Defendants No. 1 to 10 took malicious advantage of the situation and on one hand took away the [Agreement], while implementing their

malicious, deceitful and unfair trade practices."); *id*.at ¶ 21 (seeking damages for "failure to fulfill contractual obligations")). Indeed, Latif even challenges En Pointe's termination of the Agreement itself—the very claim that this Court already found to be precluded by the mandatory arbitration and forum clauses and that the arbitrator has explicitly rejected. (*See id.* at ¶ 14) ("In furtherance of the same, the said Defendant attempted to purportedly terminate the contractual relationship with Ovex illegally and in an unwarranted manner[.]")). Latif also seeks to recover lost profits resulting from the termination of the Agreement and the discontinuation of the commercial relationship between En Pointe and Ovex. Such claims squarely "arise out of" and "relate to" the Agreement, as the Agreement governed the entire relationship between the companies. In any event, the arbitrator already has issued a final, binding ruling resolving all of these issues—finding that Ovex was in material breach of the Agreement, that En Pointe was not in breach and owes nothing to Ovex, and that the Agreement is terminated for cause by En Pointe. (Dkt. No. 26-3 at 36; *see also* Case No. 2:18-cv-03235, Dkt. No. 1(Petition to Confirm Arbitral Award)).

Moreover, although Latif was not a party to this proceeding at the time the Anti-Suit Injunction Order was issued, it is firmly established that "a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1280 (9th Cir. 1992); *see also* Fed. R. Civ. Proc. 65(d) (an injunction binds the parties and "the parties' officers, agents, servants, employees, and attorneys"). As a result, "a nonparty may be held in contempt if the nonparty . . . is 'legally identified' with the defendant." *Am. Semiconductor, Inc. v. Cal. Assignments LLC*, No.: 12-CV-06138-LHK, 2013 WL 5937968, at *4 (N.D. Cal. Oct. 31, 2013).

Here, Latif is "legally identified" with Ovex. Indeed, he expressly alleges that he is bringing his claims "on behalf of Ovex" as "the sole beneficial shareholder

of all issued share capital of M/s. Ovex Technologies (Private) Limited," and as the "sole owner and beneficiary of the business being run through Ovex." (Dkt. No. 26-8.) This is sufficient for him to be bound by the Anti-Suit Injunction Order, and, therefore, to be found in contempt. *See Cardell Fin. Corp. v. Suchodolski Assocs.*, 09 Civ. 6148 (VM)(MHD), 09 Civ. 6148 (VM)(MHD), 2012 WL 12932049, at *39 (S.D.N.Y. July 17, 2012) ("[G]iven that Neves was the controlling shareholder of Worldstar, . . . [w]e therefore conclude that Neves and his Estate were bound by the anti-suit injunction" issued against Worldstar); *see also Additive Controls & Measurement Sys. v. Flowdata, Inc.*, 154 F.3d 1345, 1352 (Fed. Cir. 1998) (majority shareholder of AdCon found to be "legally identified with AdCon and therefore remained subject to contempt sanctions").

On July 5, 2018, this Court entered an Order confirming that Latif's Pakistan litigation is barred by the Anti-Suit Injunction Order and directed him to dismiss those proceedings immediately. (Dkt. No. 29). Thus, Latif is also in violation of this Order.

**C.  The Anti-Suit Injunction Order Bars Claims By Agents Of Ovex**.

The Court has authority to clarify or modify the scope of an injunction. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (2003) (party may "seek a modification or clarification of the injunction from the district court"); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.*, 700 F.2d 1279, 1285 (9th Cir. 1983).

Here, the Anti-Suit Injunction Order was based on the arbitration and forum selection provisions in the Agreement. Latif is bound by those same provisions, as it is firmly established that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Latif, as the "sole owner and beneficiary of the business being run through Ovex," concedes that he is expressly suing "on behalf of Ovex." (Dkt. No. 26-8). He is thus bound by the terms of the

Agreement—including the arbitration provision. *See Parkridge Ltd. v. Indyzen, Inc.*, No. 4:16-cv-07387-KAW, 2017 U.S. Dist. LEXIS 59269, *13-14 (N.D. Cal. April 18, 2017) ("Here, Plaintiff Mak's claims are based solely on her status as the majority shareholder of Parkridge. Thus, the Court finds that Mak is bound by the arbitration provision based on agency principles, despite not being a signatory to the Morfit Agreement."); *Brilliant Info Corp. v. Moso Power Tech Int'l Ltd.*, CV 15-3090 FMO (PLAx), 2015 U.S. Dist. LEXIS 182946, *13 (C.D. Cal. Oct. 29, 2015) (nonsignatory who was plaintiff's "sole shareholder" was bound by arbitration agreement executed by the plaintiff).

Latif's effort to cast his claims against executives, directors, and agents of En Pointe, rather than the company itself, does not alter the requirement that they be submitted to arbitration. Courts consistently hold that executives and employees of a company may invoke arbitration agreements executed by their employer. *See, e.g.*, *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1282 (6th Cir. 1990) (where "alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation," the court "follow[ed] the well-settled principle affording agents the benefits of arbitration agreements made by their principal"); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("[W]e believe that the parties fully intended to protect the individual[s] . . . to the extent they are charged with misconduct within the scope of the agreements. If it were otherwise, it would be too easy to circumvent the [arbitration] agreements by naming individuals as defendants instead of the entity Agents themselves."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("An entity such as Merrill Lynch can only act through its employees, and an arbitration agreement would be of little value if it did not extend to [them].").

The Anti-Suit Injunction Order issued to bar Ovex and its agents—including Latif—from prosecuting in Pakistan precisely the claims that Latif seeks to advance now. Ovex and Latif have repeatedly defied the Court's Order, and the Court finds they will continue to do so absent granting the relief En Pointe seeks.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Ovex and Latif are each found in contempt of Court for violating each of the Sept. 15, 2017 Anti-Suit Injunction Order and the July 5, 2018 Show-Cause Order;

2. Ovex and Latif must each immediately discontinue any litigation proceedings in Pakistan against En Pointe, its parent company PCM, Inc., or any officers, directors, employees, or agents of either company, or any affiliated company, to the extent such proceedings relate to En Pointe's Agreement with Ovex;

3. Ovex and Latif must each pay a non-penal, coercive fine of $1,000 per day for each day they fail to comply with both the Anti-Suit Injunction Order and the Show-Cause Order, to begin on the day following the date of entry of this Order; and

4. Ovex and Latif must pay En Pointe's costs and attorneys' fees incurred in this proceeding.

Dated: __8/17/2018__, 2018

**PHILIP S. GUTIERREZ**
Hon. Philip S. Gutierrez